Toni MURRAY, Plaintiff–Appellant,

v.

CITY OF CHICAGO et al.,
Defendants–Appellees.

No. 80–1035.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1980.

Decided Nov. 25, 1980.

As Amended March 11, 1981.

Martin Diestler, Law Student, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff–appellant.

Ellen G. Robinson, Asst. State's Atty., Chicago, Ill., Mary K. Rochford, Asst. Corp. Counsel, Chicago, Ill., for defendants--appellees.

Before SWYGERT and SPRECHER, Circuit Judges, and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant in the case at bar was the victim of a theft, and then of a deprivation of her constitutional rights by reason of arrest without a valid warrant. Her complaint under 42 U.S.C. § 1983 [1] was dismissed by the District Court as to certain defendants, and summary judgment granted in favor of another defendant. The circumstances are as follows:

Appellant's purse and checkbook were stolen. The theft was reported to the po-

---

* The Honorable Edward Dumbauld, Senior District Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

lice. Six to twelve months later, some of the stolen checks were cashed at various retail stores.[2] Presumably on complaints made by the stores, appellant was arrested on charges of deceptive practices and at a hearing on November 4, 1974, before Branch 68 of the Circuit Court of Cook County all complaints against her were dismissed except one which was continued until December 9, 1974. Being under the impression that all charges had been dismissed, she did not appear on December 9, 1974, and a warrant was issued for her arrest. On January 13, 1975, appellant, having learned of the warrant, appeared in Branch 68, and the warrant of December 9 was quashed and recalled by the court. On February 10, 1975, the single complaint remaining against appellant was dismissed.

Then on March 25, 1975, several months after the warrant of December 9, 1974, had been quashed, appellant was arrested at her home by two Chicago police officers, pursuant to the invalid warrant.

Although she explained to the officers that the warrant had been recalled, she was taken to headquarters, forced to strip naked and submit to searches conducted and observed by Chicago police officers. After subsequently being imprisoned for six or seven hours, she was released, and after again appearing before Branch 68 on April 10, 1975, was discharged. Following her release from police custody she received medical treatment and was hospitalized for five days.

Appellant's complaint named as defendants: (1) the City of Chicago; (2) James T. Rochford, Superintendent of the Chicago Police Department at the time of the events described above; (3) his successor in office, James O'Grady; (4) the arresting officers Pappas and Ziemke; and (5) Morgan M. Finley, Clerk of the Circuit Court of Cook County, Illinois.

The District Court granted motions to dismiss as to the city, relying on *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 91, 98 S.Ct. 2018, 2035 36, 56 L.Ed.2d 611 (1978), for require-

ment of a showing of policy or custom; and as to Rochford and O'Grady on the ground of lack of personal participation; and as to the arresting officers on the ground that the warrant appeared on its face to be valid, relying on *Baker v. McCollan*, 443 U.S. 137, 143 46, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979). As to Finley, summary judgment was granted on the ground that affidavits showed that Finley's procedures were satisfactory and adequate.

However, the affidavits merely showed that the clerk's office personnel were aware of the importance of promptly transmitting warrant recalls and that they were to be transmitted to the police on the same day; and that the order in plaintiff's case was deposited in a location similar to an "out basket," but the affiant did not know what happened to it thereafter. The affidavits did not show how the documents were handled from that point to the police department, whether by mail or by hand delivery. The affidavits submitted by the police department simply stated that examination of the book in which such items should have been listed failed to disclose any record of the recall of the warrant in appellant's case.

■■ It seems clear that appellant sustained a violation of constitutional rights by being arrested and detained pursuant to an invalid warrant. The defendants should not be permitted to "get off the hook" by merely pointing the finger at each other. Someone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice. Plaintiff should be entitled to discovery in order to determine who is the true culprit responsible for the wrong done her.[3] It would be premature to deny appellant relief at the present stage of the case, in advance of discovery or trial. Summary judgment should not be granted unless it is clear that upon no conceivable state of facts as shown by the proof could a plaintiff recover. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

---

**2.** Presumably the checks may have had her name printed on them, and the thief knew whose name to forge. It does not appear whether the forged checks exceeded her balance or were rejected by the bank as forgeries.

**3.** Defendants argue that appellant could have been more diligent in seeking discovery during the period between filing of the complaint and

granting of summary judgment. But it is common practice for lawyers to defer discovery until after determination of motions which might make discovery otiose by disposing of the case upon controlling questions of law. Or discovery *in limine* may sometimes appropriately be limited to jurisdictional questions. *Fraley v. C.&O. Ry. Co.*, 397 F.2d 1, 4 (3rd Cir. 1968).

In the case at bar, as to the city, it is possible that existence of a policy, custom, or practice might be established. If plaintiff succeeds in proving her allegation that similar unwarranted arrests have occurred frequently, to the knowledge of the parties involved, it might be possible to show dereliction of duty of constitutional dimension upon the part of the responsible officials.[4]

With respect to the arresting officers themselves, good faith action under apparently valid authority is an affirmative defense which they must plead and prove. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). But see *Joseph v. Rowlen*, 402 F.2d 367, 370 (7th Cir. 1968).

It was error for the District Court to rely upon *Baker v. McCollan*, 443 U.S. 137, 143, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979), as a basis for dismissing the action against the arresting officers. In that case there was a valid warrant. It merely named the wrong suspect, a defect similar to *idem sonans*.[5]

The judgment of the District Court is reversed and the case remanded for trial. Circuit Rule 18 shall apply.

SWYGERT, *Circuit Judge,* concurring.*
Although I agree with the result announced

in the majority opinion, I disagree with the implication in footnote 4 that plaintiff must prove that defendant Finley's actions were intentional or reckless. The majority states that mere negligence will not support a § 1983 action against Finley, *Bonner v. Coughlin*, 545 F.2d 565, 568 (7th Cir. 1976). While this standard applies in many factual situations, the majority fails to note that some official duties are mandatory. *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972).

In *McCray*, plaintiff alleged that the court clerk impeded the filing of certain papers. The court held that where an official fails to follow a court order or acts in violation of his statutory duties, "no immunity [is] recognized and the officer [is] held liable under section 1983 if his actions abridged an individual's federally protected rights." 456 F.2d at 5.[1]

I believe that if plaintiff shows at trial that Finley had a mandatory duty to execute the court's order to recall the arrest warrant, then she does not have to prove that his failure to do so was intentional or reckless. Further, if it is shown that Finley's duty to execute warrant recalls is ministerial rather than discretionary, he would not be entitled to immunity.[2] *McCray v.*

---

4. It is highly probable that in due time O'Grady, a mesne holder of the position of Superintendent of Police, will be dismissed, as his actions have had no causative impact upon appellant. Her request for equitable future relief and supervision by a federal court of the office management methods of the state officials involved is of questionable validity. See *Rizzo v. Goode*, 423 U.S. 362, 378-80, 96 S.Ct. 598, 607-08, 46 L.Ed.2d 561 (1976). However, even though the case at bar is not a class action, there is a growing trend toward granting "structural" relief and we express no opinion as to its propriety here. See Chayes, "The Role of the Judge in Public Law Litigation," 89 Harv. L.R. (May, 1976) 1281, 1309; Cox, The Role of the Supreme Court in American Government (1976) 88-89.

It is quite possible that the clerk of the court, Finley, will also ultimately be dismissed if by amplified clarification of his procedures, he is able to establish that the methods used to convey recall orders to the police department are appropriate and adequate. See *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969). Mere negligence, of course, will not support a § 1983 action against Finley. See *Bonner v. Coughlin*, 545 F.2d 565, 568 (7th Cir. 1976). Moreover, pending further clarification of the facts it would be premature to consider whether Finley is entitled to the defense of official

immunity. See *Dieu v. Norton*, 411 F.2d 761, 763 (7th Cir. 1969).

5. The warrant erroneously named Linnie, not Leonard McCollan.

* An amended opinion was issued on March 11, 1981 reflecting certain changes in footnote 4 appearing on page 367. This concurring opinion was filed in response to those changes.

Chief Judge Fairchild and Judge Cudahy voted to deny rehearing *en banc*. Their votes are predicated upon the view expressed in Judge Swygert's concurring opinion.

1. The court went on to note that when an official acts in violation of duties imposed upon him by law, he is "entitled to no more protection than any other state ministerial functionary who fails to discharge a mandatory duty." 456 F.2d at 5 (citing *Whirl v. Kern*, 407 F.2d 781 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969)).

2. The Fourth Circuit explained the rationale for distinguishing between ministerial and discretionary duties in considering whether immunity is applicable:

The immunity of "quasi-judicial" officers ... derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges. Like judges, they re-

*Maryland, supra,* 456 F.2d at 4; *Norwood v. Soloman,* 431 F.Supp. 380 (E.D.Mo.1977).

quire the insulation of absolute immunity to assure the courageous exercise of their discretionary duties. Where an official is not called upon to exercise judicial or quasi-judicial discretion, courts have properly refused to extend him the protection of absolute judicial immunity . . . .

456 F.2d at 4.