Algimiro GOMEZ; Luis Arquer; Moises Rodriguez, Sr.; Moises Rodriguez, Jr., by His Parent and Next Friend, Moises Rodriguez, Sr.; Juan Velasquez; Alberto Espino, By His Parent and Next Friend, Elias Espino, Sr.; and Jesus Dominguez, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

The CITY OF WEST CHICAGO, ILLINOIS; Eugene Rennels, Individually and in His Official Capacity As Mayor of West Chicago, Illinois; John Bullaro, Individually and In His Official Capacity As Chief of Police of West Chicago, Illinois; Joseph Iniguez and One Or More Unknown Police Officers, Individually and in Their Official Capacities As Police Officers of West Chicago, Illinois, Defendants.

No. 80 C 2685.

United States District Court,
N. D. Illinois, E. D.

Jan. 21, 1981.

Juan M. Soliz, Kalman D. Resnick, Legal Services Center for Immigrants, Bruce Goldsmith, F. Thomas Hecht, Illinois Migrant Legal Assistance, Chicago, Ill., for plaintiffs.

John B. Murphey, Ancel, Glink, Diamond & Murphy, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs are United States citizens and lawful permanent resident aliens of Hispanic descent or Spanish surname who allegedly have been or are threatened to be involuntarily detained and interrogated without probable cause by police officers of the Police Department of West Chicago, Illinois.

It is alleged that this treatment has been directed against plaintiffs solely because of their race and national origin. Plaintiffs seek declaratory and injunctive relief on behalf of a putative class comprised of similarly situated individuals and seek damages on their own behalf for injuries incurred.[1] Defendants include the City of West Chicago, the mayor and police chief of the City, and a number of specified and unspecified police officers of West Chicago. This matter is now before the Court on defendants' motion to dismiss and strike portions of plaintiffs' complaint.

## INJUNCTIVE RELIEF

Defendants urge this Court to dismiss plaintiffs' claim for injunctive relief because, defendants argue, plaintiffs' complaint does not indicate any present conduct which imminently threatens the rights of plaintiffs or the putative class members, or which amounts to a present pattern of harassment. Plaintiffs, in turn, argue that their complaint, which includes the description of a series of incidents where named plaintiffs were stopped and interrogated by West Chicago police officers regarding immigration status, reveals sufficient immediacy and reality to their allegations of likely future injury to warrant the court's jurisdiction over the injunctive claim. Regardless of what rubric is used to describe the presentation of such a question,[2] the guidelines to be used in considering a motion to dismiss are clear. A complaint should not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to the requested relief. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Seventh Circuit has confirmed the applicability of this test:

Under the Federal Rules of Civil Procedure, it is well established that, on a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

*Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir. 1977).

Plaintiffs' complaint details seven instances involving eleven separate encounters in which named plaintiffs were stopped and questioned by West Chicago police officers regarding their immigration status. In each instance, it is alleged, plaintiffs were obeying all traffic laws and were not otherwise engaged in illegal activity. An illustrative example of these encounters is the alleged experience of plaintiff Moises Rodriguez, Sr., who was stopped on three occasions. First, he was stopped while driving his automobile and asked to produce extensive documentary proof of identification. Only after showing his alien registration receipt card was he allowed to proceed. The second incident took place the next day when he was pulled over by the same officer. Upon being reminded of the incident, the officer allowed Rodriguez to proceed. On the third occasion, Rodriguez was a passenger in an auto driven by another named plaintiff when the car was pulled over. The driver was asked to produce a driver's license, and both the driver and the passenger, Rodriguez, were required to produce their immigration papers. During none of these three separate stops did the police officer issue any citation for violation of any traffic law.

Plaintiffs further allege that in addition to the specified instances experienced by the named plaintiffs, members of plaintiffs' putative class have been subjected to numerous vehicle stops and immigration status interrogations by West Chicago police

---

1. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1343.

2. Some courts have termed the question as one of whether the complaint states a case or controversy, *Rizzo v. Goode,* 423 U.S. 362, 372–73,

96 S.Ct. 598, 604–605, 46 L.Ed.2d 561 (1976), others consider it in terms of justiciability, *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1067 (7th Cir. 1976), while yet others characterize it as a question of standing, *Calvin v. Conlisk,* 534 F.2d 1251, 1252 (7th Cir. 1976).

officers. Moreover, plaintiffs allege that "[t]hese persistent and widespread stops and interrogations constitute a customary practice of illegal law enforcement activity which continues to be undertaken by the Defendants."

 Although mere conclusory allegations of a threat of renewed police misconduct fail to state a claim for injunctive relief, *Calvin v. Conlisk*, 534 F.2d 1251, 1252 (7th Cir. 1976), where there exists a persistent pattern of police misconduct, injunctive relief may be appropriate. *Allee v. Medrand*, 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566 (1974). The cases relied upon by defendants are not to the contrary. In *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), the Court dismissed a civil rights claim for injunctive relief because none of the named plaintiffs could show a direct, personal stake in the outcome; nor could they show that they had sustained, or were in real, immediate danger of sustaining, some direct injury as a result of the challenged conduct. 414 U.S. at 493–94, 94 S.Ct. at 674–75. The Court noted, however, that past wrongs are evidence of whether there is real and immediate threat of repeated injury, 414 U.S. at 496, 94 S.Ct. at 676, but that the nature of plaintiffs' actions were "not described in detail and no specific threats are alleged to have been made against them." 414 U.S. at 497, 94 S.Ct. at 676. Similarly, in *Calvin v. Conlisk*, 534 F.2d at 1252, where plaintiffs were denied standing for injunctive relief against a police department, the court was concerned that the individual plaintiffs were not threatened in a manner distinct from that of the general public. The same cannot be said of plaintiffs' complaint in the instant case. Taking plaintiffs' allegations as true, as the Court must do on a *motion to dismiss*, plaintiffs have shown a specific pattern of conduct distinctly affecting them, akin to an explicit policy, which if continuing, would demonstrate a reasonable likelihood of future harm, thereby justifying some form of injunctive relief. *Allee v. Medrand*, 416 U.S. 802, 809–11, 94 S.Ct.

2191, 2197–98, 40 L.Ed.2d 566 (1974); *Baker v. Carr*, 369 U.S. 186, 226, 82 S.Ct. 691, 714, 7 L.Ed.2d 663 (1962); *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

Defendants also rely upon the Supreme Court decision in *Rizzo v. Goode*, 423 U.S. 362, 370, 96 S.Ct. 598, 603, 46 L.Ed.2d 561 (1976), however, the procedural posture in which this case arises is far different from that in *Rizzo*. Unlike *Rizzo*, where the Court had the benefit of reviewing the record of two full trials, along with detailed findings of fact and conclusions of law made by the district court, before finding that sweeping equitable relief was not appropriate against the City of Philadelphia, its mayor, and other city and police officials for alleged wrongdoings by the police department,[3] this Court faces the question of injunctive relief at its most incipient stage—a motion to dismiss. The decision of this Court to deny defendants' motion to dismiss plaintiffs' claim for injunctive relief does not prejudge the question of whether an injunction should eventually issue.

## MUNICIPAL LIABILITY UNDER MONELL

As indicated above, the City of West Chicago is included as a defendant in this action. Defendants have moved to dismiss the City based on the Supreme Court decision in *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In *Monell*, the Court held that municipalities and other local government units may be sued directly under 42 U.S.C. § 1983 for constitutional deprivations occasioned by virtue of a governmental custom, policy, ordinance, regulation, or decision. In so ruling, the Court articulated the following standard for imposing liability upon a municipality:

> Local governing bodies, therefore can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

---

**3.** The district court in *Rizzo* heard no less than 250 witnesses during 21 days of hearings.

or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

436 U.S. at 690–91, 98 S.Ct. at 2035–36 (footnote omitted).

■■■ Defendants argue that plaintiffs' complaint fails to state a *Monell* claim against the City because plaintiffs have cited no official policy on the part of the City which could serve as a basis for liability. This argument misconstrues the clear language of *Monell.* In order to prove a *Monell* claim, it is not necessary to show formal, documentary approval of a governmental custom. *Id.* It is necessary, however, to allege more than a single incident of illegality, *Turpin v. Mailet,* 619 F.2d 196 (2d Cir. 1980), in order to prove a pattern of persistent practices sufficiently known to and approved by town officials to constitute a custom equivalent to unofficial authorization. *See, Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970). As described above, *supra* at 1244, plaintiffs have alleged a series of specific facts, which, if proven, evidence a pattern of practices sufficient to state a claim against the City. Of course, whether plaintiffs will be able to prove their claim within the meaning of *Monell* is a factual question beyond the scope of a motion to dismiss. *Murray v. City of Chicago,* 634 F.2d 365 (7th Cir. 1980); *Ellis v. City of Chicago,* 478 F.Supp. 333, 336 (N.D. Ill.1979). Consequently, defendants' motion

to dismiss the City of West Chicago must be denied.

## RENNELS AND BULLARO

■■■ Defendants also move for the dismissal of defendants Rennels (the City's mayor) and Bullaro (the police chief) on the grounds that the complaint alleges nothing more than their negligent supervision of officers. The allegations against these two defendants state that they "ordered, directed, encouraged, and ratified efforts" by defendant police officers to make unconstitutional vehicle stops, and acted in concert with agents of the Immigration and Naturalization Service in so doing. These allegations state claims well beyond that of negligent supervision; consequently, defendants' motion to dismiss Rennels and Bullaro must be denied. *See Murray v. City of Chicago,* 634 F.2d 365 (7th Cir. 1980).

## LIABILITY UNDER 42 U.S.C. §§ 1985 AND 1986

■■■ Defendants lastly argue that plaintiffs' claim of a conspiracy motivated by a class-based animus against persons of Hispanic descent or appearance or persons with Spanish surnames fails to state a claim under 42 U.S.C. § 1985(3) because the alleged co-conspirators are officers and employees of the same entity—the City of West Chicago. In support of this contention, defendants urge this Court to apply the holding of *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972), to municipalities. In *Dombrowski,* the Seventh Circuit held that the section 1985(3) requirement that "two or more persons . . . conspire" is not satisfied upon showing of a discriminatory business decision reflecting the collective judgment of two or more executives of the same firm, because such actions are effectively those of a single business entity rather than "two or more persons." [4]

**4.** Other courts have followed the Seventh Circuit's lead in *Dombrowski* with similar decisions. *See, e. g. Girard v. 94th St. & Fifth Ave. Corp.,* 530 F.2d 66, 70–71 (2d Cir.), *cert. denied,*

425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Baker v. Stuart Broadcasting Co.,* 505 F.2d 181, 183 (8th Cir. 1974).

Defendants, however, have failed to consider an essential element of plaintiffs' complaint. Paragraph 5.47 of the complaint states that, "Not only have the Defendants engaged in these activities on their own, but also they have acted in concert with agents of the Immigration and Naturalization Service to conduct numerous unlawful vehicle stops and street stops of members of Plaintiffs' class." It is thus clear that the conspiracy alleged in the complaint is not limited to the City of West Chicago and its officers and employees, but also encompasses non-city participants—the agents of the INS. Accordingly, defendants' argument must fall and their motion to strike §§ 1985(3) and 1986 as a basis for this action must be denied.[5]

For the foregoing reasons, defendants' motion to dismiss and strike portions of plaintiffs' complaint is denied. It is so ordered.

---

5. Defendants have also moved to strike certain paragraphs of the complaint for lack of specificity. After a careful review of the paragraphs at issue, the Court finds the allegations to be sufficiently specific to allow defendants to investigate the claims and prepare a defense.