Sandy LEWIS, Plaintiff,

v.

Martin TULLY, Chicago Police Officer; Unknown Police Officers of the City of Chicago; Unknown Police Officers of Sheriff's Police of Cook County, Illinois; City of Chicago, a Municipal Corporation; Richard J. Elrod, Sheriff of Cook County, Illinois; County of Cook, Illinois; Fred Eckles, Jr., Star No. 13561; and Patrick J. Lynch, Star No. 41, Defendants.

No. 81 C 3833.

United States District Court, N.D. Illinois, E.D.

May 13, 1987.

Harvey Melinger, Chicago, Ill., for plaintiff.

Stanley Garber, Corp. Counsel, City of Chicago, Jennifer Duncan-Brice, Asst. Corp. Counsel, Richard M. Daley, State's Atty., Cook County, Mark R. Davis, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Sandy Lewis alleges that defendants violated his rights under 42 U.S.C.

§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution by delaying his release from jail for approximately 11 hours. The two remaining defendants are Frank Jones, assistant supervisor of courtroom services for the Sheriff of Cook County, and Richard Elrod, Sheriff of Cook County at the time of plaintiff's incarceration. Plaintiff sues Jones in his individual capacity, and Elrod in both his individual and official capacities. (Because Elrod was succeeded in office by James O'Grady during the pendency of this suit, O'Grady replaces Elrod as the defendant in plaintiff's official capacity claim against the Sheriff.)

This six-year old case has a tangled history, one of the more recent complications of which was defendants' presentation of a motion for summary judgment on April 10, 1987, just two weeks before trial. The court denied the motion as untimely and improvident (order of April 20, 1987), but defendants renewed it on the opening day of trial. The court then reluctantly agreed to address the merits of the renewed motion, both because it had become apparent that trying the case would require resolution of the legal issues at the heart of defendant's motion, and because the lapse of time between the original motion and its renewal had enabled the court to become more fully familiar with the record and the parties' arguments.

After nearly a full day of oral arguments the court ruled that Elrod (in his individual capacity) and Jones were entitled to summary judgment on the basis of their qualified immunity. The court declined to grant the motion for summary judgment with respect to plaintiff's official capacity claim against the Sheriff. This opinion explains the court's rulings.

## FACTS

The parties stipulated to the following facts in their pretrial order:

On March 28, 1981 at about 9:30 p.m. Sandy Lewis was arrested by certain Chicago police officers for disorderly conduct for drinking in public in violation of the Chicago ordinance. The police offi-

cers ran a computer check on Sandy Lewis on their mobile computer in their auto which showed a "hit" meaning that the suspect was wanted under the name of Murray Brown alias Michael Lewis who was wanted on a bond forfeiture warrant for the underlying offense of possession of a controlled substance. In fact, Sandy Lewis was not the same person as Murray Brown, alias Michael Lewis.

On the following morning, March 29, 1981, at about 6:30 a.m. certain Chicago police officers sent Sandy Lewis to Holiday Court for the case against Murray Brown and a judge ordered that the previously set bond of $30,000 remain in force. Plaintiff was unable to post the bond and was accordingly placed in the custody of the Cook County Department of Corrections (CCDOC) at 27th Street and California Avenue in Chicago, Illinois on the morning of March 29, 1981 under the identification of Murray Brown a/k/a Sandy Lewis. The charge of disorderly conduct for drinking in public was dropped on March 29, 1981 under an order of LFD (leave to file denied) entered by Judge Joyce.

On the following morning, March 30, 1981, at about 7:00 a.m. transportation officers of the Cook County Department of Corrections transported Sandy Lewis to the 6th District courthouse of the Circuit Court of Cook County located at 16700 S. Kedzie Avenue in Markham, Illinois by bus and delivered Mr. Lewis to Sheriff's deputies in Court Services who placed Mr. Lewis in the Court lockup pending the call of his case. At about 10:30 a.m. of that morning the case of Murray Brown was called and Sandy Lewis was presented to the Court. Sandy Lewis explained that he was Sandy Lewis and not Murray Brown. The attorney for Sandy Lewis moved to quash and recall the warrant against Murray Brown for the reason that the warrant was previously recalled on December 15, 1980. That motion was granted by Judge Marovich. The judge also noted on the custodial status sheet

that "This party Sandy Lewis is not Murray Brown."

Plaintiff was returned to the court lockup by sheriff's deputies in court services where he remained until about 6:00 p.m. when he was transferred to the custody of the transportation officers of the Cook County Department of Corrections and transported by bus to the Cook County Department of Corrections where he was placed in custody and ultimately released at about 10:00 p.m. on the same day, or 11½ hours after Judge Marovich's order was entered.

On the morning of March 30, 1981, Asst. Supervisor, Nancy Schaffrath, was in charge of the court lockup and remained on duty to 2:00 or 2:30 p.m. She was thereafter relieved by defendant, Frank Jones, Assistant Supervisor of Sheriff's Courtroom Services.

The following paragraphs describe the Sheriff's procedures with respect to the release of the prisoners:

Discharged prisoners, including those who were inmates of the Cook County Department of Corrections, 2700 S. California, Chicago (CCDOC), may be released directly from any of the branch courts of the Circuit Court of Cook County, or, prisoners who were inmates may be transported back to the CCDOC following discharge to be processed for release.

Prisoners are transported between the CCDOC and the various branch courts by the Cook County Department of Corrections custodial bus.

Those discharged prisoners awaiting transportation from a branch court back to the CCDOC for release are held in lock-ups administered by the Sheriff's Court Services Department located at the branch court facilities.

It is the legal obligation, policy, and ordinary operating procedure of the Sheriff of Cook County, and of the employees of the Sheriff's Court Services Department who serve at all branches of the Circuit Court of Cook County, to carry out any lawful order of the court. It is sometimes the practice of judges of the Circuit Court to enter orders discharging prisoners which by their terms require release of the prisoner directly from the branch courtroom. Such orders are absolutely complied with by all Sheriff's personnel. Such prisoners are immediately released, or are released following a check by telephone from the branch court to the CCDOC to ensure that no additional warrant or mittimus is outstanding, according to the terms of the court's order. These prisoners are not photographed or fingerprinted prior to release.

Where prisoners are discharged in the branch court without express judicial directions or a "return" stamp, one of two procedures is followed:

First, a telephone check may be made through the CCDOC Records Division to ensure that no other warrant or mittimus is outstanding against the prisoner. If cleared by the Records Division the prisoner is released from the Sheriff's custody at the branch court unless he requests return to the CCDOC to reclaim personal property. At the 6th District Court located at Markham, the procedure is rare.

Second, a prisoner may be returned to the CCDOC to be processed for release. This is the usual procedure followed by supervisory personnel at the Markham branch court lock-up, where the basis of the discharge in court is a ruling that the prisoner has been misidentified as the defendant in a particular case, and where no express judicial directions regarding release are given. Sending the prisoner back to the CCDOC allows the speediest return of any personal property of the prisoner, since this is not brought from the CCDOC to a court appearance.

When prisoners are discharged by the court for reasons other than misidentification, a similar procedure is followed. A discharge based on misidentification, would not be the sole criterion determining whether to return the defendant to the Department of Corrections for release, but might be an additional reason for such a return.

In all cases where a prisoner is released from the CCDOC the following procedure is used:

All prisoners returning from court are processed through the Reception, Classification, and Diagnostic Center (RCDC) at the CCDOC. Legal documentation accompanying a prisoner to be released is sent from the RCDC to the Records Division, where the prisoner's "Jail History Card" is checked to ensure that he is not being held on charges other [than] that disposed of in court that day. If the record is clear of other bases for custody, the prisoner's file and history card is sent to RCDC. While the records check is made, the prisoner may be escorted back to the Division of the CCDOC where he was previously held, to collect any personal property he may have left in his cell and to be noted in the Division's record as a release. Back at the RCDC, the prisoner is questioned regarding several items of information originally placed in his history card at intake to aid in confirming his identity as the individual ordered released. The prisoner is compared to the photographs on the card, and he is asked to sign his name next to his signature placed on the card at intake. One fingerprint (right index) is taken on a space provided on the history card next to a print of the same finger made at intake. When the prisoner's identity is confirmed by comparing the prints, he is released. No new photograph is taken. The entire process for release takes approximately 2–4 hours.

## I. QUALIFIED IMMUNITY

As public officials, Elrod (individually) and Jones "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Plaintiff says Jones and Elrod should have divined the unconstitutionality of their conduct from pre–1981 cases holding law enforcement officials liable for actions resulting in the arrest or detention of persons without probable cause. *See Murray v. City of Chicago,* 634 F.2d 365, 366 (7th Cir.1980) (city officials may be liable for maintaining procedures that fail to note when warrants have been quashed, and lead to frequent arrests based on invalid warrants); *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1969) (jailer violated plaintiff's constitutional rights by negligently failing to release him for nine months after dismissal of charges against him).

This is asking too much. Lewis was a prisoner of the Cook County Department of Corrections (whether he lawfully became so is not an issue here), and defendants justifiably wanted to protect against a mistaken release. No court has ever held jailers liable for delaying a prisoner's release in order to verify his identity and ensure that they have no further basis for holding him. Even if, as plaintiff argues, it is possible to infer from *Murray* and *Whirl* that some pre-release identification procedures could be so time-consuming as to violate the Fourth Amendment, whether particular procedures for accomplishing this task are too drawn-out is a different and more difficult question than whether law enforcement officials may arrest a person without probable cause (*Murray*) or let him languish in his cell for months after the expiration of his sentence (*Whirl*). The easy answers to the questions posed in *Murray* and *Whirl* offered defendants no guidance on the constitutionality of the release procedures they employed in 1981 for prisoners appearing at the Markham courthouse. It thus is impossible to say that "a reasonable person would have known" in 1981 that the release procedures defendants employed for prisoners appearing at the Markham courthouse violated the "clearly established statutory or constitutional rights" of those prisoners. Accordingly, Elrod in his individual capacity and Jones are entitled to summary judgment on the basis of their qualified immunity.

## II. OFFICIAL CAPACITY CLAIM

■ The Sheriff contends that the stipulated facts require judgment in his favor on

plaintiff's official capacity claim against him. The Sheriff relies on two Seventh Circuit cases for the proposition that as a matter of law an 11–hour delay in releasing a prisoner is not unconstitutional: *Rogers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198–99 (7th Cir.1985) (detention of 10–12 hours while police completed post-arrest paperwork does not shock the conscience of the court and is not unconstitutional where facts alleged suggest delay resulted from mere negligence); *Wood v. Worachek*, 618 F.2d 1225, 1231–32 (7th Cir.1980) ("Generally, a jailer is liable for the illegal detention of an inmate when he unreasonably detains the inmate for detention or release....").

The Sheriff's argument oversimplifies the law. Cases in this circuit and elsewhere hold that the constitutionality of a detention depends on its justification, not on whether it endures beyond a talismanic number of hours. *See, e.g., Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir.1986) ("It is premature to say how long is too long under the fourth amendment. On remand the police should explain what must be done after an arrest for shoplifting and why reasonably diligent police officers need more than four hours to do it."); *Moore v. The Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1351–52 (7th Cir.1985) (length of time arrestees may be detained for processing must be determined on a case-by-case basis, with government bearing the burden of demonstrating timeliness); *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1025 (9th Cir.1983) (whether detention is unconstitutional depends not on whether it exceeds any fixed number of hours, but on circumstances of particular case); *McGaughey v. City of Chicago*, No. 84 C 10546, slip op. (N.D.Ill. March 18, 1987) (Aspen, J.) (post-arrest detention of between four and six and one-half hours for processing requires explanation so that court may evaluate reasonableness of detention); *Doulin v. City of Chicago*, —— F.Supp. ——, No. 82 C 6771, slip op. (N.D. Ill. August 25, 1985) (Rovner, J.). *See also Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975) (policeman's on-the-spot assessment of probable cause justifies "a brief period of detention to take the administrative steps incident to arrest").

In evaluating the Sheriff's justification for the pre-release procedures at issue here, the court must be careful not to substitute its own judgment for the reasonable decisions of the Sheriff on matters of prison security. "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). *Accord, Duckworth v. Franzen*, 780 F.2d 645, 653–56 (7th Cir.1985).

Together, the cases requiring clear justification for detention and those requiring deference to prison administrators suggest that while prison officials have broad discretion in deciding how to process prisoners for discharge, they also must be able to show that their decisions do not unreasonably intrude on prisoners' Fourth Amendment right to a prompt release. The evidence before the court on the Sheriff's motion for summary judgment approaches this standard but falls short.

Plaintiff points out that the Sheriff releases prisoners locally at branch courts other than Markham, and argues that the Sheriff could have done likewise at Markham and spared him the lengthy delay in his release. The Sheriff does not attempt to explain this apparent disparity in release procedures. Perhaps there is something about the Markham courthouse or the prisoners whose cases are heard there which makes it impractical to release prisoners locally. Perhaps the disparity is irrelevant because plaintiff would have been returned to the jail for release even under the procedures in effect at other branch courts in Cook County. But so far this is only speculation. Because the Sheriff has not established the reasonableness of his decision to release plaintiff from the Cook County jail rather than the Markham courthouse, and

because the court is inclined to give plaintiff every benefit of the doubt in resolving the Sheriff's belated motion for summary judgment, the motion is denied.