**Keith G. ROSENTRETER, Plaintiff,**

v.

**David J. MUNDING and Village of Winthrop Harbor, Defendants.**

**No. 89 C 05691.**

United States District Court, N.D. Illinois, E.D.

April 13, 1990.

---

Terrance E. Davczyk, Jeffrey A. Schmeckpeper and Ronald C. Curtis, Kasdorf Lewis & Swietlik, Milwaukee, Wis., Douglas R. Roberts, Waukegan, Ill., and Kevin J. Caplis, Querrey & Harrow, Chicago, Ill., for plaintiff.

Thomas J. Platt, Kurnik Cipolla Stephenson & Barasha, Arlington Heights, Ill., and David P. Field, Brydges Riseborough Morris Franke & Miller, Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Keith G. Rosentreter filed this 42 U.S.C. § 1983 action against the Village of Winthrop Harbor ("Winthrop Harbor") and David J. Munding, a police officer employed by the village. In addition, Rosentreter brings a pendant state claim against Winthrop Harbor under the Illinois Local Governmental And Governmental Employees Tort Immunity Act, ("Illinois Tort Immunity Act"), Ill.Rev.Stat., ch. 85, ¶ 9–102 (1981). Winthrop Harbor has moved to dismiss the two claims against it. For the reasons stated below the motion to dismiss both claims is granted.

## BACKGROUND

Rosentreter's section 1983 count alleges a "failure to train" claim against Winthrop Harbor. See City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Rosentreter claims that Munding, while acting in the scope of employment under color of law, used excessive force, including deadly force, while attempting to stop Rosentreter for speeding. Rosentreter contends that this conduct violated his 4th and 14th amendment rights. Complaint at ¶¶ 6, 7. Rosentreter alleges that Winthrop Harbor had no guidelines for use of force during routine traffic stops or grossly inadequate guidelines to ensure proper use of deadly force by police personnel. In addition, he alleges that the training and supervision of police, and specifically Munding, was "grossly inadequate and nonexistent." Complaint at ¶¶ 13, 14.

Rosentreter further alleges that Winthrop Harbor's failure to properly train, supervise and control employees, including Munding; its failure to promulgate proper guidelines against the use of excessive force; and its continued failure to discipline and reprimand employees, including Munding, who utilize excessive force, constitutes an official policy, practice or custom of condoning the unjustified use of excessive force, and, specifically, of the continued use of deadly force during routine traffic stops. Rosentreter alleges that such a policy violates section 1983 and is the direct and proximate cause of his injuries. Complaint at ¶¶ 15–17.

Rosentreter's state law count against Winthrop Harbor is based on the Illinois Tort Immunity Act, Ill.Rev.Stat., ch. 85, ¶ 9–102, which, in certain cases, directs local public entities to pay tort judgments or settlements rendered against its employees. Rosentreter claims that Winthrop Harbor is liable under that statute for any judgment entered against Munding.

## DISCUSSION

I. *Section 1983 Claim Against Winthrop Harbor*

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1977), the Supreme Court established that under section 1983 a local government may only be sued for injuries caused by its policies or customs which are the "moving force" behind constitutional violations, and not for injuries inflicted solely by its employees. Recently the Supreme Court ruled that there are limited circumstances in which allegations of inadequate training will serve as the basis for municipal liability in section 1983 cases. *Harris*, 109 S.Ct. at 1204 (1989). "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into

contact."[1]  *Id.*

■ According to the Supreme Court, the failure to train must reflect a deliberate or conscious choice by the municipality. "In resolving the issue of a city's liability, the focus must be on the adequacy of the training in relation to the particular tasks the particular officers must perform" and whether it "can justifiably be said to represent 'city policy.'"  *Id.* at 1205–06. In addition, the fact that a particular officer is unsatisfactorily trained or makes a mistake will not suffice.  *Id.* at 1206. A viable claim must therefore "condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal" rather than prove that a particular injury could have been avoided by specific training designed to avoid it.  *Id.* Finally, the deficiency in the training program must be closely related to the ultimate injury.  *Id.*

In support of the deliberate indifference standard for municipal liability in failure to train cases, the Court reasoned:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable if it actually causes injury.

*Id.* at 1205. The Court offered as an example of the deliberate indifference standard a city's failure to train its officers in the constitutional limitations on the use of deadly force in arresting fleeing felons. *Id.* at 1205, n. 10. Because the city knows its officers are required to arrest fleeing felons and gives them firearms in part to assist with that task, the need to train the officers about the constitutional limits on the use of deadly force is so obvious that the failure to do so would amount to "deliberate indifference."  *Id.*

Rosentreter argues that this "type of 'deliberate indifference' is precisely one of the allegations made" in his complaint and is "closely related to the ultimate injury, a gunshot wound to the back, inflicted by one of the Village of Winthrop Harbor's officers."[2]  With that much we agree. Rosentreter has not alleged that Munding's training in particular was inadequate or that Munding made a mistake, rather he has alleged that Munding's training as well as the training of the other officers in general was inadequate in relation to the use of force during routine traffic stops, a situation which the officers regularly encounter. "Because the appropriate use of force is a problem regularly encountered in police work, every officer must be trained to know when and how much force to use in the variety of taxing situations he or she is likely to face."  *East v. City of Chicago,* 719 F.Supp. 683, 694 (N.D.Ill.1989). Rosentreter has further alleged that the failure to train constituted an official policy which was the direct and proximate cause of his injury. Thus, although Rosentreter did not use the exact phrase "deliberate indifference" in describing Winthrop Harbor's failure to train in his complaint, drawing reasonable inferences in his favor from his description of the training as "grossly inadequate and nonexistent," and on the basis of the allegations discussed above, which we take as true, his allegations are sufficient to meet the appropriate standard upon which Winthrop Village's liability must be based.  *See East,* 719 F.Supp. at 693.

■ Nevertheless, even though Rosentreter's allegations generally meet the deliberate indifference standard, he must also

---

**1.**  Consistent with *Monell,* the deliberate indifference standard insures that a municipality will be held liable in section 1983 cases only where its policies are the "moving force" behind constitutional violations.  *Harris,* 109 S.Ct. at 1205.

**2.**  We note that Rosentreter's complaint does not specify that the injury was a gunshot wound to the back.

allege "some fact" indicating the existence of a municipal policy of inadequate training as required by *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985). Thus, to survive a motion to dismiss Rosentretter must allege specific evidentiary facts which raise the inference that City officials knew or should have known that its training, or lack thereof, posed a substantial risk. *See, e.g., Johnson v. City of Chicago,* 711 F.Supp. 1465, 1472–73 (N.D.Ill.1989) (dismissing a failure to train claim generally alleging deliberate indifference where the plaintiff alleged only his own specific incident and no other facts indicating a pattern of similar incidents resulting from the city's failure to train).[3] Rosentreter has alleged facts only about his incident with Munding and has not alleged any specific facts supporting his general allegation that other incidents have occurred, caused either by Munding or any other officer, as a result of Winthrop Harbor's alleged deliberate indifference to the need for better training. Therefore, according to the mandates of *Strauss,* Rosentreter's section 1983 claim against Winthrop Harbor must be dismissed.

We dismiss Rosentreter's failure to train claim, however, with some reluctance. We believe that *Strauss* places an unrealistic burden on certain plaintiffs who might otherwise possess legitimate claims against municipalities, yet who are foreclosed from an opportunity for recovery because of an understandable inability to meet the strict terms of *Strauss.* As other courts in this district have noted, *Strauss* creates a "Catch–22" for plaintiffs by requiring them to plead specific evidentiary facts, over which a municipality generally has exclusive control, before the plaintiffs have had the benefit of discovery. *See East,* 719 F.Supp. at 692, n. 12; *Johnson,* 711 F.Supp. at 1473 n. 5 (N.D.Ill.1989); *Payne v. City of LaSalle,* 610 F.Supp. 606, 607–08, n. 3 (N.D.Ill.1985). In *Means v. City of Chicago,* 535 F.Supp. 455, 460 (N.D.Ill.1982), Judge Marshall summed up the dilemma:

> We are at a loss as to how any plaintiff, including a civil rights plaintiff, is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim, i.e., that there was an official policy or a *de facto* custom which violated the Constitution.

*See Strauss,* 760 F.2d at 770. This predicament is particularly pronounced in the failure to train context, since it is highly unlikely that, absent the availability of discovery on the issue, an individual victim will be able to posit "some fact" in addition to the circumstances surrounding her own injury indicating a municipality's deliberate indifference to a training deficiency. Thus, under *Strauss* a viable cause of action under the failure to train theory may only be maintained either by an individual who has had the good fortune (or misfortune) to have been subjected to the same allegedly unconstitutional conduct on more than one occasion, or by an individual who was lucky enough to have met others (perhaps in jail) who had been injured in the same way as a result of the same alleged deficiencies in municipal training policy. *Cf. Johnson v. Panizzo,* 664 F.Supp. 336 (N.D.Ill.1987) (plaintiffs complaint alleges three facts which overcome the *Strauss* barrier).

We observe that the court in *Strauss* suggested in dicta one exception to its requirement that evidentiary allegations of more than a single episode is required. In an effort to distinguish a prior decision, the court indicated that dismissal for failure to state a claim against a municipality may not be warranted if the alleged circumstances are "sufficiently egregious that [the] plaintiff's injury alone suggest[s] an established policy." *Strauss,* 760 F.2d at 769, *citing Murray v. City of Chicago,* 634 F.2d 365, 367 (7th Cir.1980), *cert. granted sub nom. Finley v. Murray,* 454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377 (1981), *cert. dismissed,* 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982). In *Murray,* the plaintiff was arrested, strip searched and im-

---

**3.** In *Johnson,* the court observed that "[o]ne commonly used method of proof in like cases is to point to similar violations." *Id.* at 1472.

Even allegations of other incidents, however, will often be carefully scrutinized by the court. *See Id.* at 1473; *East,* 719 F.Supp. at 692.

prisoned for several hours on the basis of an invalid warrant that had been quashed three months earlier. *Murray,* 634 F.2d at 366. Supposedly, the warrant recall had never been transmitted properly from the clerk's office to the police department. The Seventh Circuit reversed dismissal of the complaint, notwithstanding the fact that specific allegations of other incidents were lacking, by reasoning that "[s]omeone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice." *Id.* Since it was possible that the plaintiff might be able to establish the existence of a policy, custom, or practice, the City was not dismissed at that early stage in the lawsuit. *Id.*

This exception might have provided us grounds for denying the motion to dismiss in this case, but we are uncertain how the exception based on egregiousness provides a meaningful and principled avenue of relief from the strict pleading requirements of *Strauss.* Surely the alleged circumstances in *Murray* were egregious, but the circumstances cannot be said to describe any more of a "serious malfunction in the administration of justice" than being shot in the back during a routine traffic stop, as alleged here, or being unlawfully arrested and beaten without justification, as alleged in *Strauss.* Egregious in this context is an elusive term.

The critical difference must therefore lie, if anywhere, in the nature of the alleged transgression as an indication of direct municipal liability. The court in *Strauss* described the omission in *Murray* as indicative of "action or inaction on the part of the City itself that directly caused the plaintiff's wrong." *Strauss,* 760 F.2d at 769. Yet the plaintiff in *Murray,* just as Rosentreter here, alleged no additional evidentiary facts showing that the failure to transmit the warrant recall was anything more than an isolated (and perhaps only negligent) act, on the part of an individual clerical employee of the municipality. Nevertheless, the allegations concerning the isolated event were held to support the inference that the City itself—through its policymaking employees—had failed "to establish or execute the appropriate procedures" to prevent such mistakes from occurring. In other words, the clerical error is one that presumably should not have occurred, and the fact that it occurred suggested the need for better preventive measures.[4] A court, however, might just as easily infer from a single incident of the unreasonable use of deadly force in a routine traffic stop that a municipality had failed to establish or properly execute a program to train its officers to prevent the use of such force, since the unreasonable use of deadly force in routine traffic stops is also something that presumably should not have occurred.[5] In both cases, then, it is possible that the municipality, through its policymakers, had been deliberately indifferent to the need to establish or execute preventive procedures. Yet, neither case provides the kind of evidentiary foundation at the pleading stage expressly required by the *Strauss* holding to reach that conclusion. Thus, even though we find little to distinguish Rosentreter's situation from that of the plaintiff in *Murray,* we are at a loss as to how to apply the *Murray* exception since the ex-

---

**4.** This concept is consistent with the underlying rationale of *Harris* that circumstances may indicate that a need for more or different training is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that such a failure may be deemed "to represent a policy for which the city is responsible." *Harris,* 109 S.Ct. at 1205. Of course, the question remains as to what kind of alleged circumstances are sufficient to initially support an inference of obviousness.

**5.** In *East,* 719 F.Supp. at 694, Judge Shadur drew such an inference from similar allegations. He found that appropriate use of force is a problem regularly encountered in police work and therefore the plaintiff's allegations concerning excessive use of force against him were sufficient to survive motion to dismiss. Yet, circumstance similar to those in *Murray* led to the dismissal of an action against a municipality in *Johnson,* 711 F.Supp. 1465. There, the plaintiff had been mistakenly imprisoned pursuant to a warrant issued for another man. The clerical errors alleged to have been made in that case were certainly no more nor less egregious than those in *Murray,* nor were they any less indicative of direct municipal liability. We find these results irreconcilable and indicative of the problems posed by *Strauss* and its purported exception.

ception itself appears either to fail the *Strauss* rule or to swallow it entirely. Accordingly, absent further clarification from the Seventh Circuit we must defer to the general rule announced in *Strauss*.

Frustration with *Strauss* has led some district courts to suggest measures to counter perceived inequities created by the fact pleading requirement. One court has suggested that plaintiffs should at least be entitled to limited discovery in order to satisfy the pleading requirements. *Johnson*, 711 F.Supp. at 1473, n. 5. Another court has noted that, where a plaintiff's claims against an individual officer or officers survive dismissal of the claim against the municipality, the problem may be eliminated since there is the possibility that future discovery might justify a municipality's reinsertion as a defendant. *East*, 719 F.Supp. at 692, n. 10. These suggestions presume, however, that the kind of information required to establish the factual basis for a claim against the municipality may appropriately be obtained in the context of discovery in the case against any individual defendants.[6] In any event, both suggestions indicate the inevitability of such discovery in some courts, absent further direction to the contrary from the Seventh Circuit. *Cf. Payne*, 610 F.Supp. at 608 n. 3 (N.D.Ill.1985). If district courts are going to permit such discovery, that begs the question as to whether the *Strauss* requirement that plaintiffs plead specific evidentiary facts rather than conclusory facts will actually result in any significant administrative benefits—a primary rationale underlying the *Strauss* decision.[7]

Be that as it may, it is not clear that permitting either avenue of discovery is allowed by *Strauss*. In fact, the contrary appears to be true. Both suggestions rely on the prospect of some form of "collateral" discovery. Yet, the court in *Strauss* stated that the purpose of its holding was to prevent plaintiffs from making *"Monell* boilerplate allegations" of a municipal policy in the hope of turning up evidence in discovery to be used against a municipality. *Strauss*, 760 F.2d at 768. It would thus appear that the court specifically intended to stave off the filing of complaints *and* the pursuit of discovery against municipalities when prefiling investigation has failed to disclose specific evidentiary facts that would have warranted the filing of the action against the municipality in the first instance under *Strauss*.

We agree that the goal of preventing frivolous lawsuits against municipalities is an important goal. However, out of the Seventh Circuit's concern that "the doors of the federal courtroom would swing wide open," it is likely that for many legitimate claimants, *Strauss* has barred entry altogether—and without any significant benefit. We do not believe that a failure to train claim is a claim that should be so lightly dismissed. The failure to train claim is brought against a municipality in its own right, based on acts deemed to be those of the municipality, distinct from the acts of any individual employees.[8] The preservation of a legitimate cause of action against a municipality has farther reaching consequences than merely to redress the injury of a particular plaintiff—it should

---

**6.** In other words, when the cause of action may be maintained against only individual police officers, attorney's for the officers may challenge a party seeking information through discovery concerning certain City policy, the acts or omissions of City policymaking personnel, or even the conduct of other officers, on the grounds that the information sought is beyond that which is reasonably calculated to lead to the discovery of admissible evidence in the case against the officers.

**7.** That rationale is further undercut by the fact that in the vast majority of cases in which municipalities would be dismissed under *Strauss*, a remaining cause of action against individual employees would remain. Thus, "the case bur-

den of the district courts is not really assisted by the *Strauss* approach (even assuming calendar management concerns can justify foreclosing a possible constitutional claim)." *Payne*, 610 F.Supp. at 609 n. 8. Moreover, any concern about imposing added costs of litigation on a municipality is undermined in those frequent situations when, as is the case here, a municipality undertakes the defense of its employee.

**8.** The court also indicated, that by imposing the fact pleading requirement, it wanted to ensure that municipalities would only be held liable for "injuries caused by faults 'systemic in nature,' ... [and] not for the isolated independent tort of an individual employee." *Strauss*, 760 F.2d at 770. What is not clear to us, however, is how

reduce the danger of continuing and more widespread injury to others created by the existence of an unconstitutional municipal policy or deliberately indifferent omission.

In light of this discussion, we are sympathetic with the view that dismissal is not the proper course to take since Rule 11 provides sufficient disincentives that would "shield against abuse by plaintiffs or their lawyers who file or pursue obviously groundless claims—or who pursue claims that may have appeared tenable at the outset, once their factual groundlessness becomes obvious." *Payne,* 610 F.Supp. at 609. Thus, disposition by a voluntary dismissal or upon a motion for summary judgment, once the facts have been more full developed, seems to us to be the more prudent means of overcoming some of the concerns raised in *Strauss,* without prejudicing plaintiffs with the blunderbuss approach required by that decision.

All this said, however, we are bound to follow *Strauss* and dismiss Rosentreter's Section 1983 action against the village.

## II. *Section 9–102 Claim Against Winthrop Harbor*

■ Rosentreter alleges that Winthrop Harbor is liable under section 9–102 of the Illinois Tort Immunity Act for "any judgment entered against David J. Munding." [9] Winthrop Harbor argues in its motion to dismiss that we should not exercise jurisdiction over the section 9–102 claim since section 9–102 only applies once a judgment has been entered against the employee, and that section 9–102 liability can only be invoked when a party is attempting to enforce a judgment under Fed.R.Civ.Proc. 69(a).

In support of their respective positions, both parties cite *Argento v. Village of Melrose Park,* 838 F.2d 1483 (7th Cir.1988). In *Argento,* the plaintiff brought a Rule 69(a) motion to enforce a Section 1983 judgment, which had been previously entered against two police officers, by seeking recovery from the officers' municipal employer under section 9–102. The Seventh Circuit held that a district court could exercise ancillary jurisdiction over the section 9–102 aspect of the post-trial motion to enforce judgment.[10] *Id.* at 1487–90.

Rosentreter relies on a passage from *Argento* in which the court observed that in Illinois state court "[i]t appears ... that a claim pursuant to 9–102 may be brought in the same action as the one against the government employee in his individual capacity." *Id.* at 1489.[11] Rosentreter argues that this passage indicates that the Seventh Circuit would allow such claims to be maintained prior to the entry of judgment against an individual employee. However, we do not believe *Argento* would extend that far.

■ A cause of action under section 9–102 does not arise until a judgment has been entered against one of its employees. *Id.* at 1489. Therefore, notwithstanding the fact that a 9–102 claim is deemed, post-

---

that goal is served by dismissal of a complaint such as the one here, which only seeks recovery against a municipality for its alleged systemic failure caused by its deliberate indifference in the need to train officers in the use of deadly force when engaged in a routine traffic stop. Nothing about the Section 1983 claim against the village suggests that Rosentreter is attempting to hold the village indirectly liable for the independent acts of its employees. Nor is there any reason to regard the claim as a subterfuge to achieve that end. We have consistently dismissed Section 1983 and pendent state claims brought against municipalities in which the only basis of liability is respondeat superior. That is not the basis of liability sought here.

**9.** Section 9–102 of the Act provides in part:
A local public entity is empowered and directed to pay any tort judgment or settlement for

compensatory damages for which it or an employee while acting within the scope of employment is liable in the manner provided in this Article.
Ill.Rev.Stat., ch. 85, ¶ 9–102 (1981).

**10.** The court referred to "jurisdiction in aid of or to enforce a judgment as supplementary jurisdiction", which it identified as a type of ancillary jurisdiction. *Id.* at 1487 n. 6.

**11.** The court referred to a decision by the Illinois Appellate Court in *Estate of Ahmed v. Cook County,* 146 Ill.App.3d 719, 100 Ill.Dec. 368, 497 N.E.2d 346 (1986), which involved a medical malpractice claim against Cook County Hospital and six individual doctors in which the County, under section 9–102, was "obligated to pay any tort judgment arising from acts of any employee acting within the scope of his employment."

judgment, to be a "third-party, supplemental claim[s] in which the third party's liability to the defendant is related to the original cause of action," *id.* at 1490, pre-judgment, there is no basis for bringing the claim. Unlike the failure to train claim discussed above, a municipality's liability under section 9–102 claim is based solely on the employer-employee relationship. Thus, to permit a section 9–102 claim to be brought pre-judgment would be tantamount to exercising pendent jurisdiction on a claim based on respondeat superior. As we have frequently held, the exercise of such pendent jurisdiction would circumvent the jurisdictional limitation of *Monell*, which allows a plaintiff to bring a municipality into federal court only when a municipal custom or policy has been alleged. *See, e.g., Flowers v. City of Harvey*, No. 89 C 6365 (N.D.Ill. January 31, 1990).

Therefore, we grant the motion to dismiss the section 9–102 claim against Winthrop Harbor.[12] According to *Argento,* Rosentreter will be free to bring this claim against Winthrop Harbor in the event a judgment is entered against Munding and Munding fails to satisfy the judgment. It is so ordered.

---

**12.** We note that Rosentreter is no longer seeking punitive damages under section 9–102, and that portion of his complaint is hereby dismissed.