**Anthony A. BROWN, Plaintiff-Appellant,**

v.

**Officer L. PATTERSON, et al., Defendants-Appellees.**

**No. 86–2616.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1987.

Decided June 12, 1987.

Alan M. Freedman and Bruce H. Bornstein, Freedman & Bornstein, P.C., Chicago, Ill., for plaintiff-appellant.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Karne Dimond, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

Anthony Brown was arrested by a police officer who was executing a warrant for the arrest of Anthony Moseley, alias "Anthony Brown." After spending 48 hours in jail, Brown was released on bail. He brought this suit under 42 U.S.C. § 1983 against the arresting officer and others, charging that his arrest and incarceration violated the principles of the Fourth Amendment, which have been held applicable to state and local government by virtue of the due process clause of the Fourteenth Amendment. The defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted (see Fed.R.Civ.P. 12(b)(6)). The judge granted the motion, and this appeal followed.

In August 1984 a judicial officer in Cook County, Illinois had issued a warrant for the arrest of Anthony Moseley for attempted burglary and for possession of burglary tools. The warrant listed Moseley's address as 2822 South Burnham, in Chicago, and described him as a black male born on July 30, 1960. The validity of the warrant is not contested. Although not shown on the warrant, Moseley has an alias, "Anthony Brown." The policy of the then Sheriff of Cook County, Richard Elrod, was to place the aliases of persons named in warrants in the Law Enforcement Advisory Data System (LEADS), a computerized data bank accessible by police officers. Three months after the warrant was issued, defendant Patterson, a police officer of Harvey, Illinois, stopped the plaintiff, Anthony Brown, for a traffic violation. The plaintiff's driver's license showed his address as 514 E. 154th Street, Phoenix, Illinois, and his birthdate as July 18, 1960. The Village of Phoenix is an enclave in Harvey, a town just south of Chicago. Anthony Brown is black.

Patterson arrested him, suspecting that he was Anthony Moseley (which Brown denied), and took him to the Harvey police station. He was held there for 24 hours, then transported to the Cook County Jail, where he spent another 24 hours before posting a $7,500 bond and being released.

In neither lock-up was he fingerprinted or was any other effort made to determine whether he was really Moseley.

Brown was charged with Moseley's offenses. Two months later he appeared in court to answer the charges, and was discharged with the notation that the wrong defendant was in court. The warrant for Moseley's arrest was reissued. A week later three police officers arrived at Brown's home in Phoenix to arrest him again on the warrant for Moseley. When Brown showed them the court "half-sheet" dismissing the charges against him, they decided not to arrest him; but ever since this incident Brown has been careful to retain the half-sheet on his person, lest he again be threatened with arrest pursuant to the warrant for Moseley.

The whole business is thoroughly unedifying. There ought to be a remedy for a false arrest and incarceration, although the parties seem agreed that, in all likelihood, there is none under state law in the circumstances of this case because of the broad tort immunities that law enforcement officers in Illinois enjoy. See Ill.Rev.Stat. ch. 85, ¶¶ 2–202 to 2–205; *Wilson v. Hunk,* 51 Ill.App.3d 1030, 10 Ill.Dec. 90, 367 N.E.2d 478 (1977). Yet jurors and draftees are paid; and one might have thought persons falsely arrested through no fault of their own (for Anthony Brown can hardly be blamed for the fact that a black criminal of his approximate age decided to take "Anthony Brown" as an alias) equally deserving of compensation, for the embarrassment, fear, and loss of time resulting from the arrest. Such liability might induce the authorities to explore the possibility of catching fugitives by means less likely to involve the arrest (and sometimes rearrest, see *Johnson v. Miller,* 680 F.2d 39, 40 (7th Cir.1982)) of innocent people. The problem illustrated by this case is potentially a serious one. The Chicago telephone book lists 15 Anthony Browns and 4 Tony Browns. No doubt some of them are both young and black and therefore covered, at least loosely, by the description in the warrant. Goodness knows how many of them have been or will be arrested in the quest for Anthony Moseley. However, the only

question before us is whether Brown has a remedy under section 1983 against any of the defendants.

■ He named as defendants (besides Patterson) the City of Harvey, Cook County, and Sheriff Elrod. None is culpable in the sense necessary to create liability under section 1983. We begin with Officer Patterson. If he acted reasonably in executing the warrant, even though the address and birthdate on it did not match the address and birthdate on Anthony Brown's license, then he cannot be held liable for an unreasonable seizure of Brown's person in violation of Fourth Amendment principles and hence of section 1983. This conclusion is established by *Hill v. California,* 401 U.S. 797, 803–05, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971). The police had probable cause to arrest Hill, but mistakenly arrested Miller instead, thinking he was Hill. He told the officers he was Miller, and he was, but the mistaken arrest was "a reasonable response to the situation facing them at the time," *id.* at 804, 91 S.Ct. at 1111, so the Fourth Amendment was satisfied. For cases applying this principle in circumstances similar to those here see, e.g., *Johnson v. Miller, supra,* 680 F.2d at 41–42; *Gero v. Henault,* 740 F.2d 78, 84–85 (1st Cir.1984); *Hill v. Bogans,* 735 F.2d 391, 393 (10th Cir.1984); *United States v. Glover,* 725 F.2d 120, 122–23 (D.C.Cir. 1984); *United States v. McEachern,* 675 F.2d 618, 621 (4th Cir.1982); cf. *Arnsberg v. United States,* 757 F.2d 971, 981 (9th Cir.1985).

If like many criminals Anthony Moseley has an alias—and there is no suggestion that he does not, in fact, use the alias of "Anthony Brown"—it would not be surprising if he also has a false address and birthdate. The birthdates of Moseley and Brown are only 12 days apart, and they are both black males. Harvey, where Brown was arrested, surrounds Phoenix, where he lives, and is near Chicago, where Moseley lives (or lived when the warrant was issued—he presumably decamped shortly afterward, or he would have been arrested). Patterson would have been imprudent *not* to take in Brown for further investigation.

The fact that Brown denied being Moseley was only to be expected, even if Brown was Moseley. If, as here, an arrest warrant, regular on its face, is duly issued, the officer executing the warrant does not violate the Fourth Amendment by arresting the wrong person, unless the officer acts unreasonably, which Patterson did not do. As the warrant did not violate the Fourth Amendment by containing an inaccurate or too general description of the person to be arrested, this case is not like *United States v. Doe,* 703 F.2d 745, 747 (3d Cir.1983), where the warrant was for the arrest of "Ed" (no last name given); or *Powe v. City of Chicago,* 664 F.2d 639, 644–48 (7th Cir. 1981), where the warrant was likewise held to be invalid—and in fact named the wrong person, see *id.* at 642 n. 2; *Gero v. Henault, supra,* 740 F.2d at 84; or the granddaddy of these cases, *West v. Cabell,* 153 U.S. 78, 85–86, 14 S.Ct. 752, 753–54, 38 L.Ed. 643 (1894), where the Supreme Court merely held that a warrant to be valid must specifically name or identify the person to be arrested, which the warrant for Anthony Moseley's arrest did.

■ Neither can Patterson be charged with responsibility for the failure of the City of Harvey to make efforts to find out whether Brown was really Moseley. That was not Patterson's responsibility. The complaint contains no allegations from which it can be inferred that the City of Harvey is liable either. Although a prolonged confinement of an arrested person without a hearing to determine whether he is the person named in the warrant would be a deprivation of liberty without due process of law and thus violate the Fourteenth Amendment, there is no suggestion that 24 hours was unreasonable in the circumstances. Cf. *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Coleman v. Frantz,* 754 F.2d 719, 723–25 (7th Cir.1985). Anyway there is no suggestion that the City of Harvey has a custom or policy of doing these things; and the city would not be liable for an isolated slip-up, since respondeat superior (the principle that makes an employer liable for his employee's torts committed in the scope or furtherance of the employee's duties) is not

available to plaintiffs in section 1983 suits. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ As for defendant Elrod, the Sheriff of Cook County when Patterson was arrested and jailed, we can find nothing unreasonable in a policy of placing the aliases of persons named in outstanding warrants in the LEADS data bank. The initial effort to execute the warrant against Moseley failed. He had fled the coop. He was presumably avoiding arrest by traveling under his alias, which fortunately was known to the authorities. The prudent thing to do was to make his alias available to all police officers in the area. If this is unreasonable, any person named in a warrant can avoid arrest indefinitely by the simple expedient of using an alias; the police could not be told about it. Brown argues that when applying for the warrant the sheriff's office should have told the magistrate about Moseley's alias. Brown's counsel actually stated at argument (perhaps unguardedly) that he would have no case if the alias had been listed in the warrant. But what protection would it be to the Anthony Browns of this world to have a suspect's aliases listed in the warrant along with the suspect's real name? If it was necessary in order to protect arresting officers or their superiors from suit should they arrest a person with the same name as the suspect's alias, aliases would no doubt be listed on warrants routinely. But little would be added in effective protection against false arrests, except possibly in cases, which is not this case (but may have been *Powe*), where the police, lacking solid information about the suspect's aliases and maybe not even knowing the suspect's real name, throw in a bunch of names in order to maximize their discretion in executing the warrant. If "Anthony Brown" were not an alias of Moseley we might have a different case, but there is no suggestion that it is not or that the sheriff's office was unreasonable in thinking it was. The rule that Brown contends for would be as mischievous as it would be unhelpful, since once criminals realized that they could obtain a practical immunity from arrest by going under an alias not listed in the application for an arrest warrant they would be sure to adopt a new alias as soon as they learned that a warrant was outstanding.

If Sheriff Elrod is not liable to Brown, neither is Cook County, even if his policies are attributed to it on the theory that he is the relevant policy-making official for the county. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). The jailing of Brown for 24 hours in Cook County Jail was not so unreasonable as to violate the due process clause, and anyway there is no suggestion that the length of this period was the result of a county policy. So none of the defendants named by Brown, nor others we can think of, are liable to him under the restrictive standards that govern liability for violation of section 1983. And yet as we said earlier we think there should be financial compensation for a person forced through no fault of his own to undergo the indignity of a false arrest and, until Moseley is arrested, to carry on his person at all times proof that he is not Moseley. At the very least we think that Brown should be reimbursed for whatever out-of-pocket expenses he incurred to raise bail and in missing work (if he did miss work). One might have thought that the institutional defendants would offer such compensation simply as a gesture of decency (maybe this opinion will induce them to do so); or in a prudent effort to forestall a suit costly to defend, by assuaging Brown's natural feeling of indignation at being arrested and charged for another man's crimes. Decency and institutional self-interest sometimes coincide. But it is not within our province to apply a remedy other than the limited, and inapplicable, remedy that federal law provides for false arrest and imprisonment.

AFFIRMED.