George JOHNSON, Plaintiff,

v.

The CITY OF CHICAGO, Richard J. Elrod, individually and as Sheriff of Cook County, and County of Cook, Defendants.

No. 86 C 10206.

United States District Court, N.D. Illinois, E.D.

April 20, 1989.

Sheila M. Murphy, Chicago, Ill., for plaintiff.

James P. McCarthy, Asst. Corp. Counsel and Judson H. Miner, Corp. Counsel, Chicago, Ill., for defendant, the City of Chicago.

Joseph D. Ryan, Asst. State's Atty. and Richard M. Daley, State's Atty., Chicago, Ill., for Sheriff Elrod.

MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, George Johnson (Johnson), alleges that defendants, the City of Chicago

(City), the County of Cook (County) and former Sheriff Richard Elrod (Elrod), violated his constitutional rights by wrongfully arresting and incarcerating him. The City and Elrod individually move to dismiss Johnson's complaint for failure to state a claim upon which relief can be granted.[1] For the following reasons, the motions of the City and Elrod are granted, and plaintiff's complaint is dismissed, with leave to amend consistent with this opinion.

On a motion to dismiss we assume the truth of all well-pleaded facts and view all reasonable inferences drawn from those facts in the light most favorable to plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

On January 11, 1986, Johnson was stopped by Chicago police officers for a traffic violation. He was driving on a suspended license, and was instructed by the police to follow them to the police station. During a routine computer search, the police discovered an outstanding arrest warrant for one George Johnson, an escapee from Attica Prison. The police arrested Johnson, took his fingerprints and put him in a cell.

Throughout the arrest process and subsequent incarceration Johnson repeatedly denied being the man named in the warrant. Nonetheless, he alleges that six hours after being fingerprinted the police informed him that his prints matched those of the escapee. The police had, however, made a mistake—the man they arrested was in fact not the escapee named in the warrant.

The following day, January 12, 1986, Johnson appeared before a state court judge. The police presented the judge with a valid arrest warrant and, purportedly, the man named therein. As a result, the judge ordered him held without bond. Plaintiff was subsequently transported to the Cook County Jail, where he remained for the next six days. The ordeal finally ended when the attorney who had defended the escapee George Johnson by chance saw plaintiff Johnson's file on a desk and informed the police that they had the wrong man in custody.

Relying on these facts, plaintiff brings this action under 42 U.S.C. § 1983, claiming a violation of his Fourth and Fourteenth Amendment rights and, additionally, a pendent state claim for false imprisonment.

## DISCUSSION

Under Rule 12(b) of the Federal Rules of Civil Procedure a complaint will be dismissed for failure to state a claim only if there is no set of facts which would entitle plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977).

### I. The City of Chicago

■ Section 1983 provides that any person who under the color of law causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured". In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–701, 98 S.Ct. 2018, 2035–41, 56 L.Ed.2d 611 (1978), the Court overruled its earlier decision in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities were "persons" under section 1983 and thus could be held liable for constitutional deprivations. Pursuant to *Monell* and its progeny, to successfully bring a § 1983 suit against a municipality Johnson must allege that (1) he was deprived of a constitutional right (2) as a result of either an official municipal policy or custom (3) which was the proximate cause of his injury. See *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Powe v. City of Chicago*, 664 F.2d 639, 643 (1981).

---

1. On plaintiff's oral motion, defendant County of Cook was dismissed from this lawsuit by minute order dated May 6, 1987.

## A. Deprivation of Civil Rights

The threshold inquiry is whether Johnson suffered an actionable deprivation of his constitutional rights. Johnson claims the Chicago police subjected him to an illegal seizure in violation of the Fourth Amendment and deprived him of his liberty without due process in violation of the Fourteenth Amendment. We address each contention separately.

### i. The Fourth Amendment

For the purposes of the Fourth Amendment claim we must focus on the reasonableness of Johnson's arrest by the Chicago police pursuant to the warrant for one "George Johnson." In *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), the Court examined the standard by which we measure the reasonableness of a mistaken arrest. There the California police had probable cause to arrest Hill but mistakenly arrested Miller, who was at Hill's apartment and fit Hill's description. The Court stated that as long as the police acted reasonably in mistaking Miller for Hill, the arrest was not in violation of the Fourth Amendment. In assessing the reasonableness of the arrest, the Court recognized "that those who are apprehended and are arrested many times attempt to avoid arrest by giving false identification." *Id.* at 803 n. 7, 91 S.Ct. at 1110 n. 7. As a result, the Court held that although Miller repeatedly claimed he was not Hill, the officer's mistake was reasonable under the circumstances:

> "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."

*Id.* at 804, 91 S.Ct. at 1111.

The mistake resulting in Johnson's arrest, however, is not new to the case law. The Seventh Circuit has directly addressed the arrest of a person under the mistaken belief that he or she is the person named in an otherwise valid warrant. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987); *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir.1982). These cases clearly set forth the rule that the Fourth Amendment is not violated by a mistaken arrest as long as the arresting officer acted reasonably under the circumstances, and in all three cases the court held that the arrest of the wrong person with the same name as the one in the warrant was reasonable.

Johnson claims that these three cases are distinguishable because the mistaken arrests in those cases did not take place at the police station but rather on "the street." Thus, the concern that the "criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it," *Johnson v. Miller*, 680 F.2d at 41, is not present here. Plaintiff argues that the officers acted unreasonably in arresting him in the police station without first confirming his identity.

We think plaintiff's argument lacks merit. In all three of the previously cited Seventh Circuit cases the person mistakenly arrested was eventually taken to the police station. It is therefore difficult to conclude that the distinction is decisive for, if it was, the Seventh Circuit would have held those three arrests in violation of the Fourth Amendment when the officers did not promptly check the arrestees' identities once safely at the police station.

It would be a different matter if the police officers discovered information which revealed their mistake and then failed to promptly release Johnson from custody. Under such circumstances an extension of the arrest could violate the Fourth Amendment. *See Bevier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause"). Here plaintiff alleges the police informed him that his fingerprints matched the prints of the escapee George Johnson. However, he does not claim they actually knew that the identification was incorrect. As a result, there is no factual basis to find the police acted unreasonably in either initiating or continuing Johnson's arrest. His Fourth Amendment claim must therefore be dismissed.

### ii. *Fourteenth Amendment*

The next and more difficult issue concerns Johnson's claim that the City violated his Fourteenth Amendment rights by detaining him for six days without due process of law. Essentially, this issue is composed of two inquiries. First, was the mistaken detention sufficiently lengthy to constitute a deprivation of Johnson's liberty for the purposes of the Fourteenth Amendment and, second, do the circumstances surrounding his detention constitute a denial of due process?

Neither the Supreme Court nor the Seventh Circuit has been very hospitable to Fourteenth Amendment claims in section 1983 actions based on a theory of mistaken identification by law enforcement officials. *See, e.g., Baker v. McCollon,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Patton v. Przybylski, supra; Brown v. Patterson, supra.*

In *Baker,* the Court dismissed a Fourteenth Amendment claim by a plaintiff who had been mistakenly incarcerated although the authorities actually sought another person. There the plaintiff was held for days, but five of those days were spent in another county not named as a defendant in the action. The Supreme Court held the three-day detention—over the New Years' weekend—insufficient to constitute a constitutional deprivation. *Id.* 443 U.S. at 145, 99 S.Ct. at 2695. Further, it held that the Constitution did not impose an obligation on the police to "perform an error-free investigation" of every claim of innocence. *Id.* at 146, 99 S.Ct. at 2695.

In *Patton,* the Seventh Circuit faced a situation similar to the one here. The plaintiff had been arrested after a computer search incident to a traffic violation revealed an arrest warrant for a man with the same name. The plaintiff was transferred to Cook County Jail the next day, where he remained for six days before he was taken before a magistrate. The Sev-

enth Circuit dismissed Patton's cause of action. The court, however, did not determine whether the detention constituted a constitutional deprivation because the plaintiff failed to connect the alleged constitutional violation to any of the defendants. *Id.,* 822 F.2d at 701 ("Patton must find out who was actually responsible for the delay in bringing him before [the magistrate], and sue that person, and he hasn't done this").[2]

Similarly, the plaintiff in *Brown* was arrested and incarcerated for 24 hours under the mistaken belief that he was the man named in an outstanding arrest warrant. Once again the Seventh Circuit narrowed its inquiry to whether any of the defendants named could be held liable. *Id.,* 823 F.2d at 168–69. The court concluded none of the defendants named, nor any others ~~conceivable~~, were liable under the "restrictive standards that govern liability" under § 1983. *Id.,* at 170.

 These three cases illustrate the difficulty in maintaining a successful § 1983 action in a mistaken identity case. We believe, however, that under certain circumstances extended detention on the basis of misidentification can present a viable § 1983 claim. As the Court stated in *Baker:*

> Obviously, one in [plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment....
>
> We may ... assume, arguendo, that ... mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive that accused of "liberty ... without due process of law."

443 U.S. at 144, 145, 99 S.Ct. at 2694, 2695.[3]

The key to understanding whether police conduct in mistakenly detaining an individ-

---

**2.** The court in *Patton* also dismissed the cause of action against the city on grounds that plaintiff failed to adequately plead a municipal custom or policy which caused his injury. Those issues are addressed *infra.*

**3.** That extended detention of a person under a mistaken identification threatens an inherent constitutional intrusion finds additional support in the Seventh Circuit decisions we have discussed. *See Patton,* 822 F.2d at 700 (keeping a

ual pursuant to a warrant for another person violates the guarantee of due process is found in the posture of the Court's decision in *Baker*. There the issue was whether ordinary tort-like negligence on the part of the police is of constitutional significance. The court of appeals in that case held that there was a "duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or similar name," *McCollan v. G.R. Tate et al.*, 575 F.2d 509, 513 (5th Cir.1978). Rejecting this legal conclusion, the Supreme Court held that allegations of simple negligence fail to state a cause of action under § 1983. *Cf. Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("the Due Process Clause is simply not implicated by a *negligent act* of an official causing unintended loss of or injury to life, liberty or property") (emphasis in original); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986) ("lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent").

■ Consistent with case law interpreting due process claims under § 1983, however, we believe allegations of deliberate indifference to the rights of the accused in the circumstances of this case would state a claim for constitutional violation. Although the length of detention and conduct of the police are separate questions, these issues are interrelated; a prolonged detention, coupled with the failure to investigate a claim of mistaken identification, may suggest a deprivation of liberty without due process.

■ Johnson alleges sufficient facts to establish a deprivation in the constitutional sense. Based on the discussions of the length of detention in *Baker*, *Patton* and *Brown*, we find plaintiff's six days of mistaken incarceration a sufficient lapse of time to implicate the Fourteenth Amendment. Further, consistent with *Daniels v. Williams* and *Davidson v. Cannon*, the facts indicate more than mere negligence on the part of the police. Johnson repeatedly denied being the escapee from Attica and, plaintiffs allege, the description of the George Johnson named in the warrant varied from that of the plaintiff. A simple check of his fingerprints, a comparison of photographs or even a phone call to Attica would have confirmed his story. Further, Johnson has an extremely common name; there are 34 George Johnsons in the Chicago telephone directory and, according to plaintiff, there were five George Johnsons in the County Jail at the time of his arrest. The arrest and six-day detention of Johnson on the basis of his name alone—without even minimal steps to determine whether they had the right person —presents a sufficient basis for finding deliberate indifference to Johnson's rights secured by the Fourteenth Amendment.

### B. *Municipal Policy or Custom*

Under the second prong of the standard for municipal liability for a § 1983 claim, Johnson must plead a municipal policy or custom which threatened to deprive its citizens of their constitutional rights. Although plaintiff alleges in general terms that the City inadequately trains its police regarding the constitutional rights of the accused (am.cplt. ¶¶ 20, 25), the complaint contains few facts specific to the City's policies or customs.

In a recent opinion, *City of Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court evaluated the elements of the failure-to-train theory.[4] Following the lead of *Mo-*

---

man in jail for almost a week "over his vigorous protest that he is the wrong man ... without either investigating the case or bringing him before a magistrate raises serious constitutional questions ... under the due process clause"); *Brown*, 823 F.2d at 169 (although the 24–hour detention was insufficient, a prolonged mistaken confinement, under certain circumstances,

"would be a deprivation of liberty without due process of law and [would] thus violate the Fourteenth Amendment").

**4.** In *Harris*, the plaintiff collapsed several times while in the custody of the police, who failed to provide her with any medical assistance. After her release the plaintiff was hospitalized and

*nell* and its progeny, the Court noted that a municipality cannot be held vicariously liable for its employees' actions and that some responsible municipal authority must play a part in the deprivation of the plaintiff's constitutional rights. *Id.* 109 S.Ct. at 1203 ("a municipality can be held liable under Sect. 1983 only where its policies are the 'moving force [behind] the constitutional violation' ") (citations omitted). However, the Court held that under limited and appropriate circumstances a city's failure to train could be a "policy" under *Monell,* providing a basis for liability under § 1983. This holding is in agreement with a number of circuit court opinions. *E.g., Parker v. District of Columbia,* 850 F.2d 708, 712 (D.C.Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989); *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir. 1986); *Wierstak v. Heffernan,* 789 F.2d 968, 974 (1st Cir.1986); *Patzner v. Burkett,* 779 F.2d 1363, 1367 (8th Cir.1985); *Languirand v. Hayden,* 717 F.2d 220, 227 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

■ As explained above, liability cannot be imposed under § 1983 for mere negligence. *See Daniels, supra; Davidson, supra.* Consistent with this reasoning, the Court held in *Harris* that a municipality can be held liable for inadequate training only when its policy or custom "amounts to deliberate indifference to the rights of persons with whom the police come into contact." 109 S.Ct. at 1204. *See also, City of Springfield v. Kibbe,* 480 U.S. 257, 269, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting from the dismissal of *certiorari* ) (inadequacy of police training which amounts to a deliberate indifference to rights of persons within the city's

domain may serve as a basis for § 1983 liability).

■ It will be the rare case indeed when a municipality will have an express policy of inadequately training its police force. Further, "a city cannot train its police officers for every conceivable contingency, and no municipality may be held liable for its indifference to the mere possibility of a constitutional deprivation." *Williams v. City of Chicago,* 658 F.Supp. 147, 156 (N.D.Ill.1987) (citation omitted). Nonetheless, a city's implicit custom in training its officers or its recurring acquiescence to certain inadequacies may constitute a municipal policy cognizable under § 1983. As the Court stated in *Harris:*

> The issue in a case like this one ... is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable *if it actually causes injury.*

109 S.Ct. at 1205. In other words, to ultimately prevail in a § 1983 action a plaintiff must show the municipality made a deliberate or conscious choice to implement or maintain a training program which had been proven to be inadequate. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (opinion of Rehnquist, J.).

received prolonged outpatient treatment. She brought an action pursuant to section 1983, claiming that her Fourteenth Amendment right to receive medical attention while in custody

was violated. She based her claim on evidence that the police were inadequately trained to determine when detainees needed medical attention.

■ Consistent with the dictates of *Harris*, we find that confirming the identity of persons arrested under an arrest warrant is a "usual and recurring" situation with which police must deal. 109 S.Ct. at 1206 (focus must be on "the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal"). In *Harris*, the police commanders had sole discretion to determine whether to summon medical care and the plaintiff alleged a municipal policy of not providing them with any special training in exercising that discretion. Compared to *Harris*, we think the identification of suspects presents an even more compelling situation for the application of a failure-to-train theory since the arrest and detention of criminal suspects falls within the regular and ordinary course of police conduct.

■ However, plaintiff must also plead facts to support his general allegations that it is indeed the policy of the City to inadequately train its officers. Specifically, plaintiff alleges that

> [t]he supervising and policy officers and officers ... of the Chicago Police Department have not taken steps to properly supervise officers, as the Plaintiff's fingerprints and mug shots differ radically from those of the former fugitive George Johnson.

(Am.cplt. ¶ 20.) He further alleges that City supervisors and policymakers,

> as a matter of policy have not taken steps to terminate the above said practices, have not disciplined or otherwise supervised the individual officers who engaged in the above said practices and have not effectively trained police officers ... with regard to the proper constitutional and statutory limits on the exercise of their authority.

(Am.cplt. ¶ 25.) These allegations do not provide a model of clarity. For example, it is difficult to discern exactly to what "above said practices" refers. Perhaps Johnson complains about the training of officers in the art of fingerprint checking, or perhaps he complains of the City's identification procedures in general. Further,

the allegation that the City fails to train police officers "with regard to proper constitutional and statutory limits," lacks the requisite specificity.

Moreover, Johnson's conclusory allegations fail to indicate deliberate indifference on the part of City policymakers respecting the rights of accused persons. *See, e.g., Patton*, 822 F.2d at 701 (boilerplate allegation that the county customarily fails to promptly bring accused persons before a magistrate fails to establish personal involvement of county sheriff); *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985) (conclusory allegation that the City has a policy of knowingly acquiescing in an individual police officer's brutality insufficient to establish municipal liability).

To survive a motion to dismiss Johnson must allege specific facts which raise the inference that City officials knew or should have known that its training posed a substantial risk that persons would be wrongfully detained because of mistaken identifications. One commonly used method of proof in like cases is to point to similar violations. *See Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986) ("the isolated act of an employee generally is not sufficient to impose municipal liability"); *Strauss*, 760 F.2d at 769 (discussing *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir.1980), *cert. dismissed* 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982)); *Powe v. City of Chicago*, 664 F.2d 639, 651 (7th Cir.1981) ("a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy"). As this court stated in *Williams v. City of Chicago*, 658 F.Supp. at 152, absent direct evidence that municipal policymakers actually knew or intended wrongful detention of innocent persons, "recurring similar incidents may permit an inference ... that responsible authorities have encouraged or approved such conduct, or at least that they knew or should have known of such conduct and were deliberately indifferent to it."

Here plaintiff fails to allege facts sufficient to indicate either notice to the City of recurring misidentification problems by the

Chicago police or a pattern of similar incidents resulting from the City's failure to train its officers. In his supporting memorandum Johnson claims that *Brown* and *Patton* evidence regular failings by the Chicago police to verify the identities of suspects, giving rise to a custom or policy inference. However, neither of those cases involved the City or its police department as defendants, and they are thus unavailing. Since Johnson merely alleges his own specific incident with no other facts indicating a custom or policy to inadequately train Chicago police, the amended complaint in its present form must be dismissed.[5]

### C. *Proximate Cause*

Section 1983 imposes liability on persons who "subject or cause to be subjected" others to a deprivation of constitutional rights. *See Monell*, 436 U.S. at 690–95, 98 S.Ct. at 2035–38, (policy or custom must be "the moving force of the constitutional violation"); *Oklahoma City v. Tuttle*, 471 U.S. at 808, 824–25 n. 8, 105 S.Ct. at 2428, 2436–37 n. 8, (requiring "affirmative link" between municipal policy and specific constitutional violation). Since plaintiff relies on a failure-to-train theory he must also establish a foreseeable nexus between the City's training policy and the deprivation of his constitutional rights. As the Court noted in *Harris*:

> for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. [The plaintiff] must still prove that the deficiency in training actually caused the police officers' indifference to [his needs]. Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?

Assuming *arguendo* that the City's training policy presented deliberate indifference to Johnson's constitutional rights, we find no difficulty in determining that plaintiff has alleged sufficient facts by which a jury could find proximate causation. If the fingerprints had been checked, or if any normal course of confirmation had been followed under the alleged facts, the police would have discovered that the George Johnson in custody was not the one named in the warrant and plaintiff would have been promptly released.

The question remains, however, whether the City was absolved of responsibility in light of a judicial order to hold Johnson without bail.[6] Here plaintiff was taken before a judge within twenty-four hours of his arrest, and we must determine whether the judge's order is an intervening superseding cause relieving the City's responsibility for the custody that followed. We conclude that the chain of causation between the City's mistaken identification of Johnson and his subsequent detention remained intact.

In *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988), the Seventh Circuit recently addressed the issue of causation in a § 1983 police misconduct action. It found that principles of legal causation are equally applicable to both constitutional and common law torts. *Id.* at 993. There the Chicago police suppressed evidence and falsified reports in a murder investigation. This disregard for justice resulted in an innocent man being exposed to a horrifying ordeal in the Cook County Jail. The defendants in *Jones* argued that the chain of causation had been broken by the state's attorney's decision to prosecute Jones and thus they were relieved of liability. However, the Seventh Circuit recognized that

---

**5.** This court is aware of the difficulty for a plaintiff to plead facts pertaining to the city's custom or policy, when information relating to those facts are within the exclusive control of the city. Under such circumstances, a plaintiff may be entitled to limited discovery for the purposes of satisfying pleading requirements. Here, however, Johnson pleads no facts relating to City policy on training, even those based on information and belief, that would indicate deliberate indifference to the constitutional rights of accused persons.

**6.** We address this issue in the context of the City's motion, although it did not expressly raise the causation question. Instead, the City adopted the arguments in Sheriff Elrod's motion to dismiss, and the discussion of *Patton* there implicitly raises the causation issue in the context of a magistrate's custody order.

"[i]n constitutional-tort cases as in other cases, a man [is] responsible for the natural consequences of his actions." *Id.* at 998 (quoting *Monroe,* 365 U.S. at 187, 81 S.Ct. at 484). As a result, the court held that

> [i]f police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors *or magistrates* to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.

*Jones,* 856 F.2d at 994 (emphasis added).

An analogous situation was before the Supreme Court in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1985). The respondent there brought a § 1983 action against a police officer, claiming that he applied for and received an arrest warrant without probable cause, in violation of respondent's Fourth and Fourteenth Amendment rights. The police officer argued that the judge's issuance of the arrest warrant broke the causal chain between the officer's filing for the warrant and the respondent's arrest. The Court rejected that argument and stated that "[t]he officer cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.* at 346 n. 9, 106 S.Ct. at 1099 n. 9. Although the Court spoke in terms of immunity, it expressly recognized that its discussion was equally relevant to causation. *Id.* at 344–45 n. 7, 106 S.Ct. at 1098 n. 7. Thus, even though a judge ordered that Johnson be held, and even though he was then held by the County, the Chicago police nonetheless made the mistaken identification which could properly be found the proximate cause of Johnson's detention.

## II. Sheriff Elrod

Based on his detention in the County Jail, Johnson sues Sheriff Elrod in both his official and individual capacities. Elrod moves to dismiss on the ground that the requisite causal connection to impose liability is missing. Unlike the case against the City, we grant this motion with prejudice.

Johnson's complaint against Elrod in his individual capacity must be dismissed since Johnson fails to allege any facts indicating Elrod's personal involvement. *See, e.g., Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983); *McBride v. Soos,* 679 F.2d 1223, 1227 (7th Cir.1982). Further, an official capacity suit is, in all respects other than name, treated as a suit against the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1959); *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir.1986); *Wolf–Lillie,* 699 F.2d at 870. We conclude that this action also cannot be maintained against the County.

Here, Johnson must allege that the County was the cause of his constitutional deprivation. But defendant Elrod was merely following a valid court order to detain Johnson—and this time it pertained to the real plaintiff Johnson. Although the mistake as to Johnson's identity might have been easily discovered by the sheriff's agents, it is clear that Elrod cannot be held liable:

> [T]he failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law ... so long as he acted under authority of the writ or warrant, he was performing a duty which the law *at that time* required him to perform.

*Arensman v. Brown,* 430 F.2d 190, 194 (7th Cir.1970) (emphasis in original) (quoting *Hoffman v. Halden,* 268 F.2d 280, 300 (9th Cir.1959)). A mere custodian is not required to evaluate the legal sufficiency of court orders under the threat of civil rights actions. *Henry,* 808 F.2d at 1239. Defendant Elrod was acting pursuant to the judge's order and was thus merely a custodian of Johnson during his detention in the County Jail. As a result, he cannot be held liable in this action.

## III. Pendent State Claim

We dismiss all federal claims asserted against defendants Elrod and the City and there is therefore no proper basis to continue the exercise of pendent jurisdiction over Johnson's state law claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130,

1139, 16 L.Ed.2d 218 (1966). Since this action was originally removed from state court we may exercise our discretion and either dismiss the state law action without prejudice or remand it back to the state court. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Since the dismissal of plaintiff's state law claim is on federal jurisdictional grounds, Illinois courts will toll any applicable limitations period. *See* Ill. Code Civ.Proc. § 13–217. Further, Johnson may replead his action here and may wish to join the state law theory, or he may chose to not bring his state law action at all. Under these circumstances, we dismiss his state law claim without prejudice.

## CONCLUSION

For the foregoing reasons, this court grants defendant Sheriff Richard Elrod's motion to dismiss count II and the claims contained therein against Elrod and Cook County are dismissed with prejudice. The court also grants defendant City of Chicago's motion to dismiss count II and the federal civil rights claims against the City are dismissed but with leave for plaintiff to file an amended complaint consistent with this opinion. Count I is dismissed for lack of jurisdiction.