Fanny MOY and Daniel
Vondrak, Plaintiffs,

v.

City of Chicago Police Officer Deborah GOLD, Chicago Police Officer Edward Reines individually and as agents of the City of Chicago Police Department, the City of Chicago, a body politic, The Director of Office of Professional Standards and Superintendent of the Chicago Police Department, Defendants.

No. 89 C 04181.

United States District Court,
N.D. Illinois, E.D.

April 16, 1990.

Stuart J. Bobrow, Nilson Stookal & Bobrow, Chicago, Ill., for plaintiffs.

William B. Mackin, John F. McGuire, Carolyn A. Bird, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiffs, Fanny Moy and Daniel Vondrak have filed this Section 1983 suit against Chicago Police Officers Deborah Gold and Edward Reines, the City of Chicago ("City"), Police Superintendent LeRoy Martin and Office of Professional Standards Director David Fogel. The defendants have moved to dismiss a majority of the claims raised by Moy and Vondrak. In turn, Moy and Vondrak have themselves moved to dismiss the pendent state claims included in their complaint. For the reasons stated below, these motions are granted.

This suit arises out of an incident that allegedly occurred on November 11, 1988. Although the details are sketchy, the facts as alleged in the complaint are as follows: At approximately 4:00 a.m., Moy and Vondrak were on Lake Shore Drive near Fullerton Avenue. They were stopped and detained by Officers Gold and Reines although no charges were alleged against Moy or Vondrak while they were held. At some point during this encounter, Gold and Reines physically attacked Moy and Vondrak. Moy was thrown head first into the police officer's vehicle causing her to lose some teeth and Vondrak was pistol whipped during the incident. Although Moy and Vondrak do not describe any other such incidents involving the use of excessive force, they claim that prior to this occurrence, the City, through its agents, Superintendent Martin and Director Fogel, "had been made aware of the ongoing use of excessive force by its officers for no reason but regardless ordered no training, schooling or other proper procedures to affectively [sic] train said officers in the field in those required methods." Second Amended Complaint, Count IX, ¶ 4, Count X, ¶ 4.

Moy and Vondrak filed a twelve count complaint alleging violations of their individual rights guaranteed under the Fourth and Fourteenth Amendments as well as eight pendent state law claims. Following independent discussions between the parties however, Moy and Vondrak themselves moved to dismiss the pendent claims pursuant to Federal Rule of Civil Procedure 41. The motion to dismiss the pendent state law claims is granted and this decision will therefore concentrate only on the four remaining federal claims.

■ Counts I and IV state Section 1983 excessive force claims against Officers Gold and Reines only. These counts allege that the officers violated Moy's and Vondrak's individual rights as "guaranteed by the Fourth Amendment standing alone and/or the Fourth Amendment via the Fourteenth Amendment." Second Amended Complaint, Count I, ¶ 6, Count IV, ¶ 6. Gold and Reines have moved to dismiss those portions of the claims based on the "Fourth Amendment standing alone" because that amendment is applicable to the states only through the due process clause of the Fourteenth Amendment. We agree with this distinction and because there is no federal involvement alleged in the complaint, the "Fourth Amendment standing alone" claims are dismissed.[1]

Counts IX and X state Section 1983 claims against the City, Martin and Fogel. These claims are based on the City's alleged failure to properly train its police officers in the use of physical force. The City has moved to dismiss these claims against it on the grounds that Moy and Vondrak have not pleaded facts sufficient to support their allegations that this failure to properly train police officers amounted to a custom or policy of the City.

■ In their allegations against the City, Moy and Vondrak have again claimed that the inadequate training received by defendants Gold and Reines resulted in the violation of their rights guaranteed by the Fourth Amendment standing alone and/or the Fourth Amendment via the Fourteenth Amendment. The City has moved to dismiss that portion of these claims based on the "Fourth Amendment standing alone." Here too, is no allegation of any federal involvement so the claims relying solely on the Fourth Amendment are dismissed.

[3] With respect to those claims invoking the Fourteenth Amendment, under Section 1983, a municipality may be held liable for the tortious acts of its employees only if those acts are carried out pursuant to a governmental policy or custom. *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Only when a municipal official acts in compliance with a city policy or custom is it clear that the city itself was aware of the offensive conduct. This municipal cognizance of the offense is necessary in order to avoid imposing liability on the basis of *respondeat superior*, a practice which has been forbidden by Congress. *See id.* at 690, S.Ct. at 2036.

In certain instances, a city's failure to properly train its police officers can constitute a policy or custom for purposes of Section 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, an insufficient training program "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*, 109 S.Ct. at 1204. The city's policy must provide the moving force behind the constitutional violation, therefore, a failure to train will result in Section 1983 liability only if "a deliberate choice to embark upon a course of action is made by policymakers from among various alternatives." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir.1989). In order to establish such a policy, a plaintiff must, "[a]t a minimum ... show that the [policymaking] offi-

---

1. Of course this ruling has no impact on those claims against the officers based on the "Fourth Amendment via the Fourteenth Amendment." Furthermore, the excessive force claims set out in Counts I and IV will nonetheless be analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under the less precise substantive due process standard. *See Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

cial at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." [2] *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir.1983).

Thus, proof of a policy or custom endorsing improper conduct ensures that the municipality, through its policymaking officials, has played an active part in causing the infractions either by directing its officers to engage in such conduct or by the culpable failure to deter or correct such conduct when the policymakers are or should be aware of its existence. When the violation at issue is a direct result of an official municipal policy, there is no need to establish a widespread history of such offenses sufficient to create the inference that policymakers knew or should have known of the deficiency causing the deprivation. *E.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipality liable for single decision when policymaker himself orders police officers to take action which infringes on citizens' Fourth Amendment rights); *Monell*, 436 U.S. 658, 98 S.Ct. 2018 (municipality liable for official policy requiring pregnant employees to take a leave of absence before medically necessary). In such cases, there is no question that a decision made by the city, acting through its policymakers, has resulted in a deprivation of a person's rights.

However, when there is no policymaker involvement, "the isolated act of an employee ... is not sufficient to impose municipal liability." *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986). The plaintiff must plead and prove facts sufficient to support an inference that the incident resulting in the complained of deprivation of the plaintiff's rights was part of an ongoing pattern of which city policymakers either were or should have been aware. *Strauss v. City of Chicago*, 760 F.2d 765

(1985). Thus, in order "to state a § 1983 claim against a municipality, a complaint should include something more than mere 'boilerplate' that simply repeats the language of court opinions which have defined municipal liability.... The complaint must also include a fact or facts which support municipal liability for the injury of which plaintiff complains." *Williams v. City of Chicago*, 658 F.Supp. 147, 150–51 (N.D.Ill. 1987) (citations omitted).

■ Moy and Vondrak have failed to plead any specific evidentiary facts that would indicate that their incident was somehow caused by a municipal policy. The only facts alleged are those related to the illegal arrest of which they were victims. As a matter of law, these are insufficient to indicate that the incident was "other than an isolated one unrelated to municipal policy." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir.1985). "Because a municipality can be held liable only for its regular procedures, not for isolated independent tort of an individual employee, some fact indicating such procedures must appear in the complaint." *Id.* at 770. While the fact that Moy and Vondrak were injured by officers acting under the color of state law may itself state a violation of Section 1983, it does not support an inference that City policymaking officials were aware of this or similar incidents.

■ Similarly, the allegations that Superintendent Martin and Director Fogel knew of the City's need for further training with respect to the use of force by its police officers amount to no more than boilerplate allegations that will not withstand this motion to dismiss. *See, e.g., Johnson v. City of Chicago*, 711 F.Supp. 1465, 1472 (N.D.Ill.1989). In *Johnson*, the plaintiff had been mistakenly imprisoned pursuant to a warrant issued for another man. He sued the City of Chicago, the County of Cook and Sheriff Richard Elrod

**2.** It is important to implicate the action or acquiescence of a city policymaker because Section 1983 municipal liability is based on considerations similar to corporate liability from the law of agency. Like a corporation, a municipality is bound only by the knowledge and actions of its directing officials "or by officers placed

highly enough to have express or inherent authority to act for the ... [entity] in the matter in question." *Williams v. City of Chicago*, 658 F.Supp. 147, 151 (N.D.Ill.1987). Such responsible municipal authorities are referred to as policymakers.

claiming violations of his Fourth Amendment rights. The court found that where he alleged no more than the facts surrounding his wrongful arrest, Johnson had failed to establish any inference that a municipal policy of inadequate police training resulted in his injuries. Therefore, his conclusory allegation that "[t]he supervising and policy officers ... of the Chicago Police Department have not taken steps to properly supervise officers" was insufficient to establish municipal liability. *Id.*, at 1472. In the case at bar, Moy and Vondrak have generally alleged only that City policymakers have knowingly acquiesced in an ongoing pattern of officer brutality. This is insufficient where plaintiffs have failed to make factual allegations that would support an inference that such a policy exists. *Strauss*, 760 F.2d at 769 (conclusory allegation that the City has a policy of knowingly acquiescing in an individual police officer's brutality insufficient to establish municipal liability). By making only a bald assertion that there is a policy of inadequate training and generalized allegations of City policymaker acquiescence, Moy and Vondrak have failed to state a claim against the City under *Strauss*.[3]

Counts IX and X also name Martin and Fogel as individual defendants, who have also moved to dismiss. The complaint does not indicate whether Martin and Fogel are being sued in their official or individual capacities (or both) so we shall analyze their liability in both capacities.

■ "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035; *see also, Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986). Therefore, the claims against Martin and Fogel in their official capacities must be dismissed since Moy and Vondrak have failed to state a claim against the City.

■ Regarding the claims against Martin and Fogel in their individual capacities as supervisors, in order to impose Section 1983 liability on a supervisor for failing to act, the supervisor must have personal knowledge that a constitutional deprivation exists and that the supervisor's action is necessary to set it right. *Mustfov v. Rice*, 663 F.Supp. 1255, 1261 (N.D.Ill.1987) *citing, Chapman v. Pickett*, 801 F.2d 912, 917 (7th Cir.1986). Here, Moy and Vondrak have failed to allege facts sufficient to establish that Martin and Fogel should have been aware of a deficiency in the police training policy or that any action on their part was necessary to remedy the alleged problem regarding the use of excessive force by the defendant officers. Therefore, the claims against Martin and Fogel in their individual capacity must also be dismissed.[4]

## Conclusion

The pendent state claims are dismissed pursuant to the Moy and Vondrak's own motion and on mutual agreement of the parties. The claims brought by Moy and Vondrak based on the Fourth Amendment standing alone are improper because the facts of this case involve no federal action and are therefore dismissed. The failure to train claims filed against the City (and Martin and Fogel in their official capacities) are dismissed on the grounds that Moy and Vondrak have failed to allege facts sufficient to establish the inference that a municipal policy resulted in their injuries. The claims against Martin and Fogel in their individual capacities are dis-

---

3. As we have discussed at length in a recent opinion, *Rosentreter v. Munding*, 736 F.Supp. 165 (N.D.Ill.1990), we believe that the *Strauss* pleading requirements place an unreasonable burden on plaintiffs who might otherwise possess legitimate claims against municipalities, yet who are foreclosed from an opportunity for recovery because of an understandable inability to meet the strict terms of *Strauss*. Nonetheless, we are bound to follow *Strauss*.

4. Moy and Vondrak claim that under *Harris*, policymakers can be found to have been deliberately indifferent to the rights of a city's inhabitants and therefore conclude that case supports a holding Martin and Fogel personally liable here. However, that decision dealt only with a claim against the city and therefore addresses a policymaker's liability only in his or her official capacity, not individual.

missed because the facts do not show the requisite personal involvement in the complained of incident. The parties are to file their proposed joint written pretrial order on the issues remaining in the case at the Court's May 18, 1990 status call. It is so ordered.